ELLA E. LATSON, APPELLANT, V. OLIVE D. BUCK ET AL., APPELLEES.

FILED APRIL 8, 1911. No. 16,966.

1. Brokers: AUTHORITY: SALE OF LAND. A real estate agent having the land of another for sale or trade, under an agreement with his principal by which he is to have all he can obtain over and above a certain fixed amount for his commission, may, in the absence of actionable fraud or deceit or objection by his principal, fix its selling or trading price at any sum at which he may be able to lawfully sell or otherwise dispose of it in trade.

2. ———: COMMISSIONS: RIGHTS OF PURCHASER. Where a third party in purchasing or trading for such real estate causes a part of the consideration to be conveyed to the agent, or to another designated by him, which is retained by such agent as his commission, such third person, in the absence of actionable deceit, fraud or confidential relation, cannot maintain an action to re-

cover the property which was retained by the agent as commission.

3. ———: ACTION FOR FRAUD: EVIDENCE. Evidence examined, and found insufficient to establish either the relation of principal and agent between the plaintiff and the defendants, or such fraud or deceit as would entitle the plaintiff to equitable relief.

APPEAL from the district court for Douglas county: GEORGE A. DAY, JUDGE. *Affirmed.*

*Byron G. Burbank* and *John C. Wharton*, for appellant.

*Smyth, Smith & Schall*, contra.

BARNES, J.

This case is before us a second time. By our former opinion it was held that the allegations of the petition were sufficient to state a cause of action, and the judgment of the district court sustaining an objection to the introduction of any evidence in support of it was for that reason reversed. Thereafter there was a trial of the case upon its merits, which resulted in a general finding in favor of the defendants, and a dismissal of the action for want of equity. The plaintiff has appealed from that judgment.

It appears that the action was based on the theory that the defendants, by taking advantage of the confidential or fiduciary relations alleged to have been in existence between them and the plaintiff as principal and agent, defrauded her and obtained title from her to three certain houses and lots in the city of Omaha, which she prayed the court to order the defendants to reconvey to her, and for general equitable relief.

This being an appeal in equity, we have tried the case *de novo.* From a careful consideration of the evidence, it appears: That in the month of August, 1907, one T. B. Holman was the owner of 230 acres of land in Sarpy county; 160 acres of this land was clear of incumbrances, but on the remaining 70 acres there was due the state the

sum of $568 as a balance of the purchase price; that on the 24th day of that month Holman and the defendants David R. Buck and son entered into an agreement by which the defendants were given an option to handle, sell or purchase said land, and were to have as their commission all they could obtain for it over and above the sum of $2,500; the purchaser was to assume the payment of the amount due to the state as aforesaid, and Holman was to receive $2,500 in cash. Thereupon the defendants, who were real estate dealers, doing business in the city of Omaha, proceeded to advertise the farm for sale or trade. At the same time the plaintiff was the owner of the lots in question, on which there were three small dwellings. It appears that she was anxious to exchange her property for a flat or rooming house, and to that end went to the office of the defendants and interviewed the elder Buck, informing him of her desires. At that interview he informed her that one Doctor Impey was the owner of a brick house which he desired to exchange for other property. It appears that she saw Doctor Impey, but failed to make any arrangement with him, for the reason that he did not want her property, as it would not suit his purposes. It further appears that the defendants informed the plaintiff that they had the land above mentioned for sale or trade, but were unable to offer it to her at that time because they had another customer with whom negotiations were pending. It also appears that later on the negotiations were discontinued, and thereupon the defendants informed the plaintiff that they would trade the land to her for her houses and lots, if satisfactory arrangements could be made. It seems that at first she was not disposed to trade for the land, but later on concluded to examine it, and went with the defendant David R. Buck, Sr., to the premises, where they spent a part of a day, and made a thorough examination of the land, its quality, location, improvements, and everything connected with it; that the plaintiff at that time procured samples of the corn growing on the land, and of the hay, which was

then in the stack, and took the same home with her in or-
der to consult with her sister about the advisability of
making a trade.    Meanwhile the defendants had inquired
the price of the plaintiff's property, and she informed them
that she considered the lots in question worth $4,500.

Thereafter the defendants informed the plaintiff that
they would trade her the farm for her houses and lots, she
to assume the balance of the purchase price due the state
on the school land, pay them the sum of $1,500 in cash,
and convey her houses and lots to whomsoever they might
designate.    At first she informed the defendants that she
thought they ought to make a less price, or induce the
owner to sell or trade the property to her for a less price
than that above mentioned.    Later on they informed her
that that was the best they could do so far as the price
was concerned. She thereupon agreed to convey her houses
and lots to whomsoever the defendants might name, pay a
small plumbing bill of $75.10 that might become a lien on
her houses, pay the defendants $1,500 in cash, and assume
the balance of the purchase price due the state upon the
land in question and they on their part were to convey the
land to her, or to whomsoever she might designate.    She
thereupon paid the defendants $200 to bind the bargain,
taking their receipt for the same, and entered into a writ-
ten agreement in accordance with the terms and conditions
of the trade as above stated.    The defendants procured
an abstract of title to the farm and delivered it to the
plaintiff, and it appears that she did not rely on the de-
fendants in this matter at all, but took the abstract of
title to one Judge Covell, a practicing attorney in the city
of Omaha, for his examination and opinion.    Some defects
were found in the abstract, which were finally corrected
in accordance with the suggestions of her attorney.

In the meantime Holman, the owner of the land, and
his wife, returned from Colorado, where they were then
living, to Sarpy county; and upon being notified of the
pending trade they came to the office of the defendants
and executed and delivered a deed of the land to the plain-

tiff. She thereupon procured a deed of the houses and lots in question to be executed and delivered to the defendant Olive D. Buck. A mortgage upon her houses and lots was executed to a loan company represented by Honorable John C. Wharton for a sufficient sum of money with which to pay the difference between the $1,500 in cash to be paid by the plaintiff and the $2,500 which was the cash purchase price of the land, which was to go to Mr. Holman. The negotiations were concluded, the loan procured, the trade was completed, the conveyances were all made, and the deal was thus finally closed. It appears that about a year and a half after the transaction was completed the plaintiff ascertained by inquiry from Holman, the former owner of the land, that he had received from the defendants $2,500 as the purchase price of his land, instead of some Colorado property which she says she understood was to be exchanged therefor. The plaintiff thereupon informed Holman that the defendants had cheated him, and that he ought to sue to recover the houses and lots in question. This he declined to do, and stated to the plaintiff that he had received all that he asked for the land, and was satisfied with the whole deal. Thereafter she conceived the idea that the defendants had cheated her out of her houses and lots, and commenced this action to recover them.

The testimony discloses, without dispute, that the plaintiff was familiar with the values of real estate; that she was, to some extent, a real estate dealer on her own account and for others. Upon her cross-examination she admitted that during her residence in Omaha, of some 15 or 20 years, she had been engaged for herself and others in from 20 to 40 real estate deals. While on the witness-stand she declared positively that she considered the defendants as her agents in making the trade in question; but her statement must give way to the fact as disclosed by the great weight of the evidence, which convinces us that she acted wholly for herself in the transaction complained of. It appears that she knew—in fact, she admitted that she knew—the defendants were the agents of Holman for the

sale of his land—she stated in conversation with several of the witnesses that the defendants said something about their having an option on the land. Four or five disinterested witnesses testified that while the negotiations were pending, and at or about the time the abstract was examined, the plaintiff informed them that she believed the defendants were getting her houses and lots for their commission, but that it did not make any difference to her, because she was making a good trade anyway. This the plaintiff denied, but we are constrained to accept the testimony of disinterested and apparently unprejudiced witnesses in preference to the plaintiff's statements. It appears that the plaintiff was a shrewd business woman, and made no mistake in consummating the trade in question. The value of the land which she procured was at that time from $35 to $40 an acre, the lowest estimate of its value was $35 an acre. It appears that the houses and lots in question which she conveyed to the defendant Olive D. Buck were actually worth at that time between $2,500 and $3,000, the highest estimate of their value being $3,000. It thus appears that she obtained the land in question, worth at that time at the lowest calculation $7,150, in exchange for her houses and lots, worth $3,000, $1,500 in cash, and the assumption of the payment of $568, the balance of the purchase price for the 70 acres of school land. She therefore paid for the land the equivalent of $5,068; she has ever since retained it, and has never offered to convey it either to the defendants or to Holman; she made, by the exchange of the property and money for the Holman land, about $2,000; while the defendants, as their commission on the transaction, obtained an equity in the houses and lots, which the plaintiff conveyed to Olive D. Buck, of the value of $2,000.

At first it seemed strange to us that Holman would part with so valuable a tract of land for so small an amount of money, but he explained that matter upon the witness-stand by saying that he had moved to Colorado at the time he gave the defendants the option on his farm; that he

wanted to dispose of it because at that time the Missouri river had headed for it, and he was of the opinion that it would be all washed away in a short time, and he wanted to get all he could out of it before that contingency happened. It appears, however, that before the plaintiff went to examine the land the river had changed its course, the current having set in another direction, and so the land was left intact, and its undisputed value at the time the trade was consummated, was $7,150.

It follows that the district court was right in his general finding for the defendants, for there appears to be no equity in her case. The judgment of the district court is therefore

AFFIRMED.